Milo Steven Marsden (4879)
Adam C. Buck (12043)
**DORSEY & WHITNEY LLP**
111 South Main Street, 21st Floor
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Email: marsden.steve@dorsey.com
        buck.adam@dorsey.com

Jonathan V. Goodman (Pro Hac Vice)
Law Offices of Jonathan V. Goodman
788 North Jefferson Street - Suite 707
Milwaukee, WI 53202-3739
Telephone: (414) 276-6760
Email: jgoodman@ameritech.net

*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| OVIVO USA, LLC, a Delaware limited liability company,<br><br>     Plaintiff,<br><br>v.<br><br>W.S.A. ENGINEERED SYSTEMS, INC., a Wisconsin Corporation, K & D TECHNICAL SERVICES, LLC, a Wisconsin Limited Liability Company, BARTA & ASSOCIATES, LLC, a Wisconsin Limited Liability Company, and DAN BARTA,<br><br>     Defendants. | **ANSWER TO FIRST AMENDED COMPLAINT**<br><br><br>Case No. 2:18-cv-00593<br><br>Judge Robert J. Shelby |

W.S.A. Engineered Systems, Inc., K&D Technical Services, LLC, Barta & Associates, LLC, and Dan Barta ("Defendants"), by and through counsel of record, hereby respond to the First Amended Complaint of Ovivo USA, LLC ("Plaintiff"), and admit, deny, and allege as follows:

## PARTIES AND JURISDICTION

1.      Defendants admit the allegations of paragraph 1.

2.      Defendants admit the allegations of paragraph 2.

3.      Defendants admit the allegations of paragraph 3.

4.      Defendants admit that K&D Technical Services, LLC is a dissolved Wisconsin limited liability company, of which Mr. Someah was an owner.  Defendants deny that it currently shares the same business address as W.S.A. Engineered Systems, and deny the remaining allegations of paragraph 4.

5.      Defendants admit that Barta & Associates is a Wisconsin limited liability company that has its principal place of business in Mukwonago, Wisconsin.  Defendants deny the remaining allegations of paragraph 5.

6.      Defendants admit that this court has subject matter jurisdiction over this action but otherwise deny the allegations of paragraph 6.

7.      Defendants admit that this court has subject matter jurisdiction over this action but otherwise deny the allegations of paragraph 7.

8.      Defendants deny the allegations of paragraph 8.

9.      Defendants deny the allegations of paragraph 9.

## FACTUAL ALLEGATIONS

10.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, and on that basis deny the allegations.

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, and on that basis deny the allegations.

12.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12, and on that basis deny the allegations.

13.     Defendants deny the allegations of paragraph 13.

14.     In response to paragraph 14, Defendants admit Kaveh Someah is an individual and is domiciled and resides in the State of Utah. Defendants also admit that at one time Mr. Someah owned a company Water Services of America Inc.  Defendants deny the remaining allegations of paragraph 14, and affirmatively aver that Mr. Someah acquired or retained ownership of Water Services of America, Inc.'s brush-type cleaning systems, and acquired or retained ownership of the right to use ball type cleaning systems in the HVAC market.

15.     Defendants admit that Mr. Someah was at one time an employee of Water Services of America, Inc., later an employee of BG-WSA, Inc., and later an employee of Ovivo. Defendants further admit that Mr. Someah was employed by Ovivo until January 12, 2017, and that for some period of time he was Vice President in charge of Ovivo's Energy Group. Defendants otherwise deny the allegations of paragraph 15.

16.     Defendants deny that Mr. Someah "steered" work to WSA Engineered Systems, Inc., and affirmatively aver that both before and after Ovivo terminated Mr. Someah, Ovivo employees placed purchase orders directly with WSA Engineered Systems, Inc., because it had

2

knowledge and expertise in water filtration and cleaning technologies that Ovivo or its predecessors, at various points in time, did not have.  Defendants further aver that Mr. Someah's ownership of WSA Engineered Systems, Inc. was widely known by Ovivo employees long before 2015 and was, prior to 2015, disclosed to, discussed with, and known by at least seven direct supervisors of Mr. Someah.  Defendants further aver that WSA Engineered Systems, Inc.'s personnel trained Ovivo engineers on certain water filtration and cleaning systems including ball type cleaning systems.  Defendants deny that Mr. Someah had an "apparent conflict of interest," and affirmatively aver that Mr. Someah's simultaneous involvement with both WSA Engineered Systems, Inc., and Ovivo was "mutually beneficial to each company."  Defendants admit that Mr. Someah signed a document prepared by Ovivo's counsel, entitled "Resolution of Potential Conflict Interest," indicating that he "Acknowledged and Agreed."  Defendants otherwise deny the allegations of paragraph 16.

17.   Defendants deny the allegations of paragraph 17, and affirmatively aver that in a March 27, 2015 email to Marc Barbeau, Mr. Someah stated that in 2002 the Brackett Green company asked him and the rest of the BG-WSA staff to move to Houston.  Only Mr. Someah agreed to the move.  Shortly thereafter, Brackett Green's technical and sales staff in Houston asked Someah if his old technical, service and sales staff in Milwaukee could continue working with and train the Brackett Green staff in Houston.  At the same time, a handful of the old technical, service and sales staff asked Someah to keep WSA Engineered Systems, Inc., in business under their management.  In connection with this request, they stated to him at the time that they would "continue to support [Brackett Green] with design, engineering, field service work, parts sales for old projects, provide training to [Brackett Green] engineers in Houston,"

and they "would not compete with [Brackett Green]," and would "remain active only in the

HVAC market."

18.     Defendants deny the allegations of paragraph 18, and affirmatively aver that in

the March 27, 2015 email, Mr. Someah explained that, after he had moved to Houston, WSA

Engineered Systems, Inc., "became an important subcontractor to [Brackett Green] with agreed

engineering charges, daily rate for service, and discounted prices for parts for existing customer."

Defendants further aver that the March 27, 2015 email explains that Brackett Green management

and staff in Houston were well aware of Mr. Someah's ownership of WSA Engineered Systems,

Inc., and that communication between WSA Engineered Systems, Inc., and Brackett Green

occurred at the "BG P&S and the operation group" level.  Finally, Defendants aver that the

March 27, 2015 email explains that Brackett Green was able to generate some "$5 to 7 Mill" in

annual revenue in part because of "the engineering help [Brackett Green] was receiving from

[WSA Engineered Systems, Inc.]," but that Brackett Green's "engineering needs began to

diminish as [Brackett Green] engineers started to get trained," and the company's need for WSA

Engineered Systems, Inc., "became limited to P&S work with small revenue generated for [WSA

Engineered Systems, Inc.]"

Defendants further aver that this situation repeated itself in late 2005, when EIMCO

Water (now known as OVIVO), acquired Brackett Green, and moved the Brackett Green offices

to Salt Lake City, Utah.  Only Mr. Someah and an administrative assistant agreed to move to Salt

Lake.  A handful of staff remained in Houston, but the rest of the technical and sales staff left the

company.  In Salt Lake, EIMCO had to hire new engineers and sales staff.  They had little

knowledge of and no training in the area of the filtration equipment and ball type cleaning

systems.  EIMCO management requested WSA Engineered Systems, Inc., assist and train the

Salt Lake engineers on filtration and Ball type cleaning systems as they were hired.

Management also requested that WSA Engineered Systems, Inc., provide engineering services,

supply parts, provide factory inspection and testing, site commissioning, equipment start-up and

customer training. This work diminished as EIMCO's Salt Lake staff began to learn more and

began to take over the engineering, factory inspection, and some of the service work. Eventually,

EIMCO sent only overflow work for factory inspection or site commissioning to WSA

Engineered Systems, Inc., or work that presented an unusual situation such as where Ovivo staff

were not able to solve a technical problem, or were not able to travel.  In addition, EIMCO

continued to purchase certain parts (*e.g.*, valves, actuators) from WSA Engineered Systems, Inc.,

where WSA Engineered Systems, Inc., was able to offer better pricing than EIMCO could get

from suppliers in the Salt Lake area.

     19.     Defendants deny the allegations of paragraph 19.

     20.     Defendants deny the allegations of paragraph 20.

     21.     Defendants deny the allegations of paragraph 21.

     22.     Defendants deny the allegations of paragraph 22, and affirmatively aver that in

the June 26, 2015 letter, Ovivo agreed that Mr. Someah's simultaneous involvement with both

WSA Engineered Systems, Inc. and Ovivo USA was "mutually beneficial to each company," as

was the fact that the two companies did business with one another.  Defendants further aver that

the reason the parties entered the June 26, 2015 letter was not "these and other concerns," as

alleged, but rather that Ovivo purportedly no longer had a need to continue to conduct business

with WSA.  Defendants further aver that Ovivo agreed that the "drawings, designs, or other

technical information," referenced in the allegations of paragraph 22 as being the sole property of Ovivo, specifically *excluded* any drawings, designs or other technical information that were in WSA Engineered Systems, Inc.'s possession prior to affiliation with Brackett Green or its affiliated or predecessor companies, and not subsequently purchased by Brackett Green companies.

23.     In response to paragraph 23, Defendants admit that Mr. Someah and Mary Carbajal signed the June 26, 2015 Letter Agreement but otherwise deny the allegations of paragraph 23.

24.     Defendants deny the allegations of the first and second sentences of paragraph 24, and affirmatively aver that Mr. Barta created Barta & Associates, LLC, at the request of Ovivo employees.  Defendants further aver that Ovivo employees requested Dan Barta and Barta & Associates, LLC, to perform certain work for Ovivo.  Defendants deny the allegations of the final sentence of paragraph 24.  Defendants otherwise admit the allegations of paragraph 24.

25.     Defendants deny the allegations of paragraph 25.

26.     Defendants deny the allegations of paragraph 26.

27.     Defendants deny the allegations of paragraph 27.

28.     In response to paragraph 28, Defendants admit that K&D Technical Services, LLC was a Wisconsin limited liability company from 2008 to 2017 and that Mr. Someah owned K&D Technical Services, LLC.  Defendants deny the remaining the allegations of paragraph 28.

29.     Defendants deny the allegations of paragraph 29, and affirmatively aver that the referenced representation agreement made K&D Ovivo's exclusive sales representative for the Midwest Region of the U.S.  K&D, in addition, served as non-exclusive sales representative for

Ovivo on a project by project bases in other regions of U.S. and overseas.  Defendants further aver that the 2010 letter discontinued the *exclusivity* of the relationship memorialized in the agreement, but both parties understood and expected K&D would continue to function as an Ovivo sales representative on a project by project basis.  Defendants further aver that continuation of this sales representative relationship was beneficial to Ovivo.

30.     Defendants deny the allegations of paragraph 30, and affirmatively aver that Mr. Someah's ownership of K&D was at all times fully disclosed to and known by Mr. Someah's direct supervisors and the Regional Sales Managers responsible for the covered territories. Defendants further aver that employee ownership of or affiliation with companies that performed services for Ovivo was rampant, widely-known and accepted at Ovivo.

31.     Defendants deny the allegations of paragraph 31.  *See* response to paragraph 30.

32.     Defendants deny the allegations of paragraph 32.

33.     Defendants deny the allegations of paragraph 33.

34.     Defendants deny the allegations of paragraph 34.

35.     Defendants deny the allegations of paragraph 35.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants deny the allegations of paragraph 37, and affirmatively aver that none of the design elements referenced in paragraph 37 were new, novel, non-obvious or developed by Ovivo.  Rather, this type of design, where the "basic concept . . . was to avoid passing the tube cleaning balls through the pump," was introduced to the market by a company known as "GEA," nearly 30 years previously.  In the intervening 30 years, such systems have been installed by other companies (not Ovivo) at numerous power plants (*e.g.*, Trans Alta Utility (Sundance

Station), Alberta Power, Saskatchewan Power, TVA (paradise station), PG&E (Geysers stations 14 & 18). Defendants further aver that GEA was purchased by a company known as Taproggee, and that Taproggee (among others, *e.g.*, Innova) offers this design in products it sells today.

38.     Defendants deny the allegations of paragraph 38.

39.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the first sentence of paragraph 39, and on that basis deny same.  Defendants deny the remaining allegations of paragraph 39.

40.     Defendants deny the allegations of paragraph 40, and affirmatively aver that Water Services of America Inc. responded to an NCPA request for bid in or about September of 2018.  Defendants further aver that the NCPA request for bid related to service and repair of a condenser tube cleaning system that was sold to NCPA by Water Services of America Inc., in or about August of 1985.  Finally, defendants aver that the NCPA project did and does not involve the use of any confidential information of Ovivo.

41.     Defendants deny the allegations of paragraph 41.

42.     Defendants deny the allegations of paragraph 42.

43.     Defendants deny the allegations of paragraph 43.

44.     Defendants deny the allegations of paragraph 44

45.     Defendants deny the allegations of paragraph 45.

46.     Defendants deny the allegations of paragraph 46, and affirmatively aver that, prior to 2017, Ovivo generally did not require entities it was doing business with to enter confidentiality agreements.

47.     Defendants deny the allegations of paragraph 47.

48.     Defendants deny the allegations of paragraph 48.

49.     Defendants deny the allegations of paragraph 49.

50.     Defendants deny the allegations of paragraph 50.

51.     Defendants deny the allegations of paragraph 51.

52.     Defendants deny the allegations of paragraph 52.

53.     Defendants deny the allegations of paragraph 53.

54.     Defendants deny the allegations of paragraph 54.

## FIRST CAUSE OF ACTION
**(Federal Misappropriation of Trade Secrets—18 U.S.C. § 1836)**
**(WSA, K&D, Barta & Associates, Mr. Barta)**

55.     In response to paragraph 55, Defendants incorporate by reference their responses

to all paragraphs as if set forth fully herein.

56.     Defendants deny the allegations of paragraph 56.

57.     Defendants deny the allegations of paragraph 57.

58.     Defendants deny the allegations of paragraph 58.

59.     Defendants deny the allegations of paragraph 59.

60.     Defendants deny the allegations of paragraph 60.

61.     Defendants deny the allegations of paragraph 61.

62.     Defendants deny the allegations of paragraph 62.

63.     Defendants deny the allegations of paragraph 63.

64.     Defendants deny the allegations of paragraph 64.

65.     Defendants deny the allegations of paragraph 65.

66.     Defendants deny the allegations of paragraph 66.

67.     Defendants deny the allegations of paragraph 67.

68.     Defendants deny the allegations of paragraph 68.

69.     Defendants deny the allegations of paragraph 69.

70.     Defendants deny the allegations of paragraph 70.

71.     Defendants deny the allegations of paragraph 71.

72.     Defendants deny the allegations of paragraph 72.

**SECOND CAUSE OF ACTION**
**(State Misappropriation of Trade Secrets—Utah Code Ann. §§ 13-24-1 et seq.)**
**(WSA, K&D, Barta & Associates, Mr. Barta)**

73.     In response to paragraph 73, Defendants incorporate by reference their responses to all paragraphs as if set forth fully herein.

74.     Defendants deny the allegations of paragraph 74.

75.     Defendants deny the allegations of paragraph 75.

76.     Defendants deny the allegations of paragraph 76.

77.     Defendants deny the allegations of paragraph 77.

78.     Defendants deny the allegations of paragraph 78.

**THIRD CAUSE OF ACTION**
**(Breach of June 26, 2015 Letter Agreement)**
**(WSA)**

79.     In response to paragraph 79, Defendants incorporate by reference their responses to all paragraphs as if set forth fully herein.

80.     Defendants admit that Water Services of America, Inc., signed a document entitled "Resolution of Potential Conflict Interest" on or about June 26, 2015.  Defendants otherwise deny the allegations of paragraph 80.

81.     Defendants deny the allegations of paragraph 81.

82.     Defendants deny the allegations of paragraph 82.

83.     Defendants deny the allegations of paragraph 83.

84.     Defendants deny the allegations of paragraph 84.

85.     Defendants deny the allegations of paragraph 85.

86.     Defendants deny the allegations of paragraph 86.

87.     Defendants deny the allegations of paragraph 87.

88.     Defendants deny the allegations of paragraph 88.

**FOURTH CAUSE OF ACTION**
**(Tortious Interference with June 26, 2015 Letter Agreement)**
**(Dan Barta and Barta & Associates)**

89.     In response to paragraph 89, Defendants incorporate by reference their responses

to all paragraphs as if set forth fully herein.

90.     Defendants deny the allegations of paragraph 90.

91.     Defendants deny the allegations of paragraph 91.

92.     Defendants deny the allegations of paragraph 92.

93.     Defendants deny the allegations of paragraph 93.

94.     Defendants deny the allegations of paragraph 94.

95.     Defendants deny the allegations of paragraph 95.

96.     Defendants deny the allegations of paragraph 96.

97.     Defendants deny the allegations of paragraph 97.

98.     Defendants deny the allegations of paragraph 98.

99.     Defendants deny the allegations of paragraph 99.

## FIFTH CAUSE OF ACTION
### (Injunctive Relief)
### (All Defendants)

100.     In response to paragraph 100, Defendants incorporate by reference their responses to the prior paragraphs as if set forth fully herein.

101.     Defendants deny the allegations of paragraph 101.

102.     Defendants deny the allegations of paragraph 102.

103.     Defendants deny the allegations of paragraph 103.

104.     Defendants deny the allegations of paragraph 104.

105.     Defendants deny the allegations of paragraph 105.

## SIXTH CAUSE OF ACTION
### (Conversion)
### (All Defendants)

106.     In response to paragraph 106, Defendants incorporate by reference their responses to all paragraphs as if set forth fully herein.

107.     Defendants deny the allegations of paragraph 107.

108.     Defendants deny the allegations of paragraph 108.

109.     Defendants deny the allegations of paragraph 109.

110.     Defendants deny the allegations of paragraph 110.

111.     Defendants deny the allegations of paragraph 111.

## GENERAL DENIAL

Defendants deny each and every allegation not specifically admitted herein.

## AFFIRMATIVE DEFENSES

In addition to the affirmative defenses set forth below, Defendants reserve the right to assert further defenses if their existence is later established through discovery.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the court's lack of personal jurisdiction over Defendants.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims against some or all of the Defendants are barred, in whole or in part, because on or about October 6, 2017 Plaintiff executed a Settlement Agreement which released Mr. Someah and his "affiliated corporations, related business entities and employees acting in any capacity, from any and all past or present claims, demands, causes of action, obligations, damages, liabilities, expenses, or compensation, of whatever kind or nature, including but not limited to, those that were or could have been asserted in the Action, any alleged breach of contract, any alleged breach of duty of loyalty, any alleged tortious interference, or any alleged misappropriation of confidential, proprietary or business information, (including but not limited to the federal Defend Trade Secrets Act, 18 U.S.C. §1836, and the Utah Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1 et seq.), whether by way of complaint, counterclaim, or otherwise. . . ."

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of res judicata.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of collateral estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by a lack of valid or adequate consideration.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's prior independent breach.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the various statutes of limitations.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by waiver, estoppel, and/or laches.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate damages.

## TWELVTH AFFIRMATIVE DEFENSE

Plaintiff's claims against Defendants fail, in whole or in part, because Defendants possess no property belonging to Plaintiff.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims based on alleged misappropriation of trade secrets fail because Plaintiff has failed to identify any specific legally protected trade secrets or confidential information.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail, in whole or in part, because any information accessed, viewed, used, or transferred by Defendants contained no confidential, proprietary, or trade secret information belonging to Plaintiff.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims against fail, in whole or in part, because any information accessed, viewed, used, or transferred by Defendants was well known in the water filtration, treatment, ball type automatic tube cleaning system and handling industry.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail, in whole or in party, because Plaintiff has not exercised reasonable or sufficient efforts to maintain the secrecy of any information alleged in the Complaint.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's tort claims fail because they are preempted by the Utah Uniform Trade Secrets Act.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims are barred because the contractual provisions at issue are unenforceable or subject to limitation by the Court. Specifically, certain of the restrictive covenants at issue contain vague and ambiguous terms, are overbroad, fail to reasonably define the geographical scope of the restriction, and are not reasonably necessary to protect Plaintiff's goodwill or other legitimate business interest.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or part, because any conduct by Defendants is privileged competition, and the Complaint constitutes an improper effort to restrain competition in violation of Federal and Utah public policy.

## TWENTIETH AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims have been mooted by the return, or offered return to Plaintiff of all documents, and/or information relating in any way to Defendant's substantive work with Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Defendants demand that Plaintiff's Complaint be dismissed with prejudice, that Plaintiff recover nothing from Defendant, and that the Court order Plaintiff to pay all costs and fees incurred by Defendants in this matter.

DATED this 15th day of May, 2019.

**DORSEY & WHITNEY LLP**


/s/ *Milo Steven Marsden*
Milo Steven Marsden
Adam C. Buck
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of May, 2019, I caused a true and correct copy of the

foregoing to be served through the Court's CM/ECF system on each of the following:

>   Scott M. Peterson and Clint R. Hansen
>   FABIAN VANCOTT
>   216 South State Street, Suite 1200
>   Salt Lake City, UT 84111
>   spetersen@fabianvancott.com
>   chansen@fabianvancott.com
>
>   Cameron M. Nelson
>   Gretchen N. Miller
>   Sarah Skulman
>   GREENBERG TRAURIG, LLP
>   77 West Wacker Drive, Suite 3100
>   Chicago, IL 60601
>   nelsonc@gtlaw.com
>   millerg@gtlaw.com
>   skulmans@gtlaw.com
>   *Counsel for Plaintiff*
>
>   Jonathan V. Goodman
>   Law Offices of Jonathan V. Goodman
>   788 North Jefferson Street - Suite 707
>   Milwaukee, WI 53202-3739
>   jgoodman@ameritech.net

*/s/ Vanessa Thompson*